IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DAVID J. HINES, | ) | Civil No. 3:11-cv-00175-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————————— | ) | |

> Bruce W. Brewer
> Law Offices of Bruce W. Brewer, PC
> 419 Fifth Street
> Oregon City, OR 97045
>
>     Attorney for Plaintiff
>
> S. Amanda Marshall, U.S. Attorney
> Adrian L. Brown, Asst. U.S. Attorney
> 1000 S.W. 3rd Avenue, Suite 600
> Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Gerald J. Hill
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff David Hines brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his applications for Disability Income Benefits (DIB) and Supplemental Security Income disability benefits (SSI) under the Social Security Act (the Act).

For the reasons set out below, the Commissioner's decision should be affirmed.

**Procedural Background**

Plaintiff filed applications for DIB and SSI disability benefits on September 26, 2005, alleging that he had been disabled since December 24, 1999 because of back and neck problems caused by injuries. He subsequently amended the date of his alleged onset of disability to April 1, 2004, and added diabetes, high blood pressure, and nerve damage to his legs and arms as causes of his alleged disability.

After his applications had been denied initially and upon reconsideration, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ). A hearing was held before ALJ Richard Say on July 17, 2008. In a decision filed on December 23, 2008, ALJ Say found that Plaintiff was not disabled within the meaning of the Act. That decision became the final decision of the Commissioner on December 10, 2010, when the Appeals Council denied

Plaintiff's request for review.  In the present action, Plaintiff challenges the Commissioner's decision.

## Background

Plaintiff was born on November 17, 1953,  and was 55 years old at the time of the ALJ's decision.  He earned a GED in 1971.  Plaintiff has worked as a truck stop service attendant, auto mechanic, cashier/gas attendant, clean-up crew worker and foreman, forklift operator, motel clerk, truck driver, and combine operator.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three.  20 C.F.R. § 404.1520©.

FINDINGS AND RECOMMENDATION - 3

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform relevant work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs

that exist in significant numbers in the national economy.  Id.


## Medical Record

Relevant portions of the medical record will be addressed in the discussion below.

## Hearing Testimony

### Plaintiff

Plaintiff testified as follows at the hearing.

Plaintiff had been troubled by pain in his back and feet for a long time before he stopped working in April, 2004.  In his last job he worked part-time at a motel that his wife managed.  In that job, Plaintiff worked mostly at the front desk.  He also did some light maintenance work such as cleaning out blocked sinks.  Plaintiff and his wife were both terminated after Plaintiff's wife suffered an on the job back injury.

At the time of the hearing, Plaintiff and his wife were living in a small motor home that had a living space similar to that of a pick-up camper.

Plaintiff has diabetes and high blood pressure, and often experiences pain in his right foot and "major cramps" in his left leg.  His right foot sometimes feels as if it has "spikes sticking through the heel."  He experiences this pain almost every day, and about once per week the pain "put[s] him down" and he needs to sleep.  Plaintiff also experiences significant neck pain, which sometimes requires him to lie down and rest.  Sometimes he uses a neck brace to relieve the pressure.

Plaintiff injured his lumbar spine in 1985 and had neck surgery in 1996.  Several tendons in his right arm were sliced in 1983, and he had carpal tunnel surgery on his left wrist.  His left

hand "[doesn't] work too bad" now.  Plaintiff can bathe and dress himself, but has problems with

his right hand, including numbness, and cannot button his shirts.

Plaintiff is able to shop, but cannot do so for sustained periods.  He is tired most of the

time, naps two or three hours every day, and spends a lot of time watching television.  He used to

play a guitar and work on cars, but can no longer carry out these activities.

Plaintiff can lift 20 pounds, but cannot do so on a sustained basis.  He can stand for 10

minutes and walk one-half block without needing a break.

**Vocational Expert**

The ALJ posed a vocational hypothetical describing an individual with Plaintiff's age and

education who could perform light exertional level work with the following limitations: The

individual could occasionally stoop, crouch, crawl, and kneel; could occasionally climb ramps

and stairs; could never climb ladders, ropes, and scaffolds; could not reach overhead; could

occasionally grasp, finger, and feel with the right, non-dominant extremity; and should avoid

heights, moving machinery, and vibrations.

The VE testified that the described individual could perform Plaintiff's past work as a

cashier/gas attendant and motel clerk.  He further testified that an individual who was limited to

sedentary work and had the other restrictions noted above could not perform any of Plaintiff's

past work.

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since he filed his applications for disability benefits.

FINDINGS AND RECOMMENDATION - 6

At the second step, the ALJ found that Plaintiff had the following severe impairments: Degenerative disc disease post cervical spine fusion in 1996, lumbar spine laminectomy in 2005, and right arm laceration in 1982.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next evaluated Plaintiff's residual functional capacity (RFC). He found that Plaintiff could perform light work, except that he could only occasionally stoop, crouch, crawl, kneel, climb stairs, grasp, finger, and feel with his right hand, and could not climb ladders, reach overhead, or tolerate exposure to heights, moving machinery, or vibration. In reaching this conclusion, the ALJ found that Plaintiff's statements concerning his impairments and symptoms were not credible to the extent that they were inconsistent with this RFC assessment.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could perform his past relevant work as a cashier/gas station attendant and motel work as he had "actually performed" those jobs. Based upon this conclusion, the ALJ found that Plaintiff was not disabled, and did not proceed to step five.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears

FINDINGS AND RECOMMENDATION - 7

the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991),

and bears the burden of establishing that a claimant can perform "other work" at Step Five of the

disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal

standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986). The Commissioner's decision must be upheld, however, even if "the evidence is

susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.


**Discussion**

Plaintiff contends that the ALJ erred in concluding that he could perform past relevant

work, failing to ask the VE whether his testimony was consistent with the Dictionary of

Occupational Titles (DOT), failing to find his diabetes with peripheral neuropathy was a

"severe" impairment at step two, finding that Plaintiff was not wholly credible, and in rejecting

the opinion of an examining physician.

1 **Ability to Perform Past Relevant Work**

Plaintiff contends that the ALJ erred in concluding that he was not disabled because he

could perform his past work as a motel clerk and as a cashier/gas attendant. He argues that the

ALJ erred in finding that these jobs constituted "substantial gainful activity" and erred in

concluding that these jobs could be performed by an individual who was limited to light work.

Plaintiff's argument is well taken as to the motel clerk position. As Plaintiff correctly notes, work experience is "relevant" only if the work was performed in the previous 15 years, lasted long enough for the employee to learn the job, and constituted "substantial gainful activity" (SGA). 42 U.S.C. §§ 404.1565(a); 416.965(a); C.F.R. § 404.1560(b)(1); SSR 82-62. Plaintiff correctly notes that the record shows that he earned only $400 per month while working in the motel position. Even with the $250 per month value of the room provided with the job added, Plaintiff's average monthly earnings were less than the $700 per month required to constitute SGA during the time Plaintiff worked at the motel. Under these circumstances, the motel work did not constitute past relevant work regardless of the correctness of Plaintiff's assertion that his motel job required the ability to perform medium exertional level work.

Plaintiff also asserts that the $400 he earned working at Gresham 76 Fast Gas, Inc. in 1997 and the $3,800 he earned working at the Biggs Travel Plaza in 1999 did not constitute substantial gainful employment. He contends that earnings of $700 per month were required in order to constitute SGA in 1999, and argues accordingly that if he worked six months or more at the Biggs Travel Plaza that year, his average earnings would have been below the level for SGA. Plaintiff asserts that the ALJ "made no finding about the length of time plaintiff work[ed] as a gas attendant," and contends that such a finding was required "for the determination whether he ever engaged in SGA as a cashier/gas attendant. . ." He argues that there was "insubstantial evidence to support the finding that [his work for Biggs Travel Plaza ] constituted past relevant work."

Plaintiff's argument is well taken as to his work at Gresham Fast Gas, Inc., in 1997, but fails as to his work at the Biggs Travel Plaza in 1999. Plaintiff has overstated the amount of

FINDINGS AND RECOMMENDATION - 9

earnings required to constitute SGA in 1999, and substantial evidence supports the conclusion

that the $3800 that Plaintiff earned working at Biggs Travel Plaza during that year constituted

SGA.  Earnings of $700 per month were required to satisfy the SGA requirement from July

through December, 1999.   However, from January through June, 1999, earnings of $500 per

month were sufficient to constitute SGA.  See www.ssa.gov/oact/cola/sga.html.

        The administrative record includes a form Plaintiff completed indicating that he had

earned $7 per hour while working 8 hours per day, 6 days per week, at the Biggs facility.

Plaintiff also indicated that in that position, he had worked as lead employee, and had supervised

3 to 4 other employees.  Given these representations concerning Plaintiff's  hours, wage rate, and

level of responsibilities, substantial evidence supports the ALJ's implicit conclusions that

Plaintiff worked at the cashier/gas attendant position long enough to learn to perform it, and that

his earnings during the time he worked at the Travel Plaza in 1999 satisfied the SGA

requirements.

         Plaintiff also contends that the ALJ erred because he found that Plaintiff was limited to

light level work but that he could perform the cashier/gas attendant "as performed," even though

the record shows he had performed that work at the medium level.

        This contention also fails: As the Commissioner correctly notes, a claimant is considered

capable of performing his past relevant work if he can perform the work either as actually

performed, or as the job is generally performed in the national economy 20 C.F.R. §§

404.1560(b)(2), 416.960(b)(2).   The VE testified that the cashier/gas attendant position was a

light exertion level job, and that it could be performed by an individual with Plaintiff's RFC.

This testimony was consistent with the DOT.  See DOT #915.447-010, 1991 WL 687866.  Under

these circumstances, any error the ALJ may have made concerning the exertional requirements

FINDINGS AND RECOMMENDATION - 10

of the cashier/gas attendant position as Plaintiff actually performed the work was harmless, and substantial evidence supported the conclusion that Plaintiff could perform this past relevant work.

2. **ALJ's Failure To Ask Whether VE's Testimony Was Consistent With DOT**

Plaintiff contends that this action must be remanded because the ALJ failed to ask the VE whether his testimony was consistent with the DOT.

I disagree.  Certainly, the ALJ should have asked the VE whether his testimony was consistent with the DOT.  SSR 00-4p (ALJ has "affirmative responsibility to ask about any possible conflict" between VE's testimony and DOT);  Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) (ALJ required to inquire as to whether VE's testimony conflicts with DOT). Where, as in Massachi, an apparent conflict between the VE's testimony and the DOT is noted, the ALJ's failure to ask the VE about a possible conflict requires remand.  Id.   However, this failure may be harmless if there is no conflict between the VE's testimony and the DOT.  Id. at 1154 n. 19.

Plaintiff bears the burden of showing that an administrative legal error was prejudicial. See Shinseki v. Sanders, 556 U.S. 396, 409 (2009).   Here, the DOT and the VE both described the cashier/gas attendant position which the VE testified an individual with Plaintiff's RFC could perform as light exertional level work.  Under these circumstances, Plaintiff has not shown that he was prejudiced by the ALJ's failure to ask the VE whether his testimony was consistent with the DOT.

3. **Omission of Diabetes With Peripheral Neuropathy From Step 2 Findings**

Plaintiff contends that the ALJ committed reversible error by failing to include diabetes with neuropathy as a "severe" impairment at step two of the disability analysis.

An impairment or combination of impairments is considered "severe" at step two if it significantly limits a claimant's ability to perform basic work activities.  SSR 96-3p.  An impairment is not severe only if it is a slight abnormality that has no more than a minimal effect on the ability to do such activities.  Id.  The "severe impairment" analysis is a "*de minimis* screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).

Plaintiff notes that the medical record establishes that he has diabetes with related neuropathy, and  that he complained of pain and numbness in his feet related to that condition. He notes that he reported that neuropathy limited his ability to stand and that diabetes caused significant daytime fatigue which required him to sleep during the day.  Plaintiff asserts that these effects had more than a "minimal effect" on his ability to work.

The Commissioner contends that the ALJ did not err in omitting diabetes with neuropathy from the list of his severe impairments because he correctly observed that Plaintiff's neuropathy pain was relieved by Cymbalta.  The Commissioner asserts that Plaintiff's reports of neuropathy related pain either predate the prescription of that medication or were made at times when Plaintiff was not taking that medication.  In addition, the Commissioner contends that, though the ALJ did not find that diabetes was a "severe" impairment, "after step 3 and before step 4, the ALJ found that Plaintiff was limited to light work with some postural, environmental, and manipulative limitations, and that there is no evidence of additional limitations resulting from Plaintiff's diabetes."

The ALJ did not explicitly find that Plaintiff's diabetes and related peripheral neuropathy was not a "severe" impairment.  However, he cited substantial evidence supporting the conclusion that diabetes and neuropathy had no more than minimal effects on Plaintiff's  ability

FINDINGS AND RECOMMENDATION - 12

to perform work related activities.  The ALJ  noted that Plaintiff had been able to discontinue

diabetes medication after losing weight, and that Glucophage, an oral medication, was later

prescribed.  He also noted that Plaintiff's complaints of pain from neuropathy "were resolved

with Cymbalta," and observed that there was no evidence that Plaintiff's diabetes and related

neuropathy caused additional limitations.

       The medical record included  substantial evidence supporting the ALJ's omission of

diabetes and neuropathy as "severe" impairments at step two.  However, assuming that the ALJ

erred in failing to list these impairments among Plaintiff's "severe" impairments, the error was

harmless because the failure to conclude that an impairment is severe at step two can only

prejudice a claimant at steps in the disability analysis that are not resolved in the claimant's

favor.  See Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (omission of "severe"

impairment at step two not prejudicial where ALJ proceeded to further steps in analysis and

accounted for impairments in RFC).  Here, the ALJ found that Plaintiff had severe impairments

at step two and then proceeded to both evaluate his RFC and determine whether he could

perform his past work.  The omission of diabetes with peripheral neuropathy at step two did not

prejudice Plaintiff at step three, because Plaintiff presented no evidence or argument supporting

the conclusion that diabetes with neuropathy, alone or in combination with other impairments,

met or equaled a presumptively disabling impairment included in the "listings."[1]  In addition, he

has not shown that his diabetes resulted in greater functional restrictions than the ALJ found in

his RFC analysis.  Under these circumstances, if the ALJ erred in omitting diabetes with

---

[1] In summary of the ALJ's decision, Plaintiff asserts that the ALJ supported his step three analysis with "no analysis whatsoever," and contends, with no citation to any authority, that "remand on that basis alone is required."  The Commissioner correctly notes that, in the absence of explanation or evidence showing that he has an impairment or combination of impairments that meets or medically equals a listed impairment, Plaintiff has shown no prejudicial error.

peripheral neuropathy at step two, Plaintiff has not shown that this error was prejudicial.  See Shinseki v. Sanders, 556 U.S. at 409.

4. **ALJ's Credibility Determination**

Plaintiff contends that the ALJ failed to provide the required support for his conclusion that Plaintiff's testimony concerning his symptoms and limitations was not wholly credible.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

The ALJ must examine the entire record and consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."  SSR 96-7.

Plaintiff's medically determinable impairments could reasonably be expected to cause some degree of the symptoms alleged, and there was no affirmative evidence of malingering.

The ALJ was therefore required to provide clear and convincing reasons for concluding that Plaintiff's description of his symptoms and limitations was not wholly credible.

The ALJ met that burden here largely by citing medical records showing that Plaintiff's peripheral neuropathy was very responsive to treatment and that Plaintiff's functional limitations were significantly less severe than he alleged.  As the Commissioner correctly notes, the effectiveness of medication is relevant in assessing the severity of a claimant's symptoms, 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3), and the inconsistency of a claimant's testimony with the medical records is a legitimate basis for discounting a claimant's credibility.  Carmickle, 533 F.3d at 1161.

Here, the ALJ reasonably concluded that Plaintiff's assertions that he was extremely limited in his ability to stand and walk were inconsistent with evidence that his neuropathy responded well to medication, and with medical records indicating that he had been able to be on his feet a lot during a time when he was not being treated for neuropathy.   Further, though Plaintiff alleged that his fatigue and insomnia were caused by degenerative disc disease, the ALJ reasonably concluded instead that his substantial daily naps were not medically necessary, but resulted from sleeping in the cramped confines of his small camper.

The ALJ cited significant inconsistencies between Plaintiff's statements and the observations and opinions of medical experts.  Most significantly, he correctly noted that Dr. Kim Webster, an examining physician, found that there was no objective medical evidence that Plaintiff was limited in his ability to stand, walk, sit, lift, or carry, and no objective evidence of the need for postural, manipulative, or environmental restrictions.   The ALJ also cited the opinions of reviewing Agency consultants who had found that Plaintiff was not limited in the ways he had alleged.

FINDINGS AND RECOMMENDATION - 15

The ALJ provided clear and convincing reasons for concluding that Plaintiff's description of his symptoms and limitations was not wholly credible.

5. **Rejection of Examining  Physician's Opinion**

In medical records dated February 19, 2001, Dr. Michael Wilson, an examining physician, opined that the back pain that Plaintiff reported was "consistent with objective findings."  Plaintiff cites this evidence in support of his assertion that objective medical evidence established the existence of his back impairments.  He asserts that the ALJ "silently, and therefore erroneously rejected" this opinion.

Any argument that the Commissioner's decision should be reversed because the ALJ did not refer to Dr. Wilson's opinion fails for at least three reasons.  First, given that this opinion predates the alleged onset of Plaintiff's disability by several years, it is at most of marginal relevance.  Second, Dr. Wilson's statement upon which Plaintiff relies did not set out any diagnosis or functional limitation that the ALJ failed to consider.  And third, the ALJ did not reject the conclusion that objective evidence supported the conclusion that Plaintiff had back impairments that were reasonably expected to produce some degree of the symptoms alleged. Instead, the ALJ explicitly found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ."  Under these circumstances, Plaintiff cannot establish that the ALJ erred in failing to discuss Dr. Wilson's opinion, or that this omission was prejudicial to his claim in any manner.

FINDINGS AND RECOMMENDATION - 16

## Conclusion

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

## Scheduling Order

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due October 9, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 19th day of September, 2012.


＿＿＿＿＿ /s/ John Jelderks ＿＿＿＿＿＿＿＿＿＿＿
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 17